❒ Original          ❒ Duplicate



CLERK'S OFFICE
A TRUE COPY
Apr 11, 2025
/s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| The Cellular Telephone Assigned Call Number 414-712-4799 ("Target Cell Phone B") | ) ) ) | 

Case No.  25-M-360 (SCD)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___4-25-25___ *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Hon. Stephen C. Dries___ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for _____ days *(not to exceed 30)*     ☑ until, the facts justifying, the later specific date of ___10/07/2025___ .

Date and time issued: ___4-11-25. 9:30 am___

*Judge's signature*

City and state:  Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1.      Records and information associated with the cellular device assigned call number: 414-712-4799 (referred to herein and in Attachment B as "**Target Cell Phone B**"), which is in the custody or control of AT&T (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2.      **Target Cell Phone B**.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.      The following subscriber and historical information about the customers or subscribers associated with **Target Cell Phone B** for the time period August 1, 2024, to the present:

   i.      Names (including subscriber names, user names, and screen names);

   ii.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.      Local and long distance telephone connection records;

   iv.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.      Length of service (including start date) and types of service utilized;

   vi.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii.      Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.        All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by **Target Cell Phone B** for the time period August 1, 2024, to the present including:

a.     the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

b.     information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.     Information associated with each communication to and from **Target Cell Phone B** for a period of 30 days from the date of this warrant, including:

i.     Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.     Source and destination telephone numbers;

iii.     Date, time, and duration of communication; and

iv.     All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cell Phone B** will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.     Information about the location of **Target Cell Phone B** for a period of **30** days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

i.     To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and

technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of **Target Cell Phone B** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, involving **MONTERO** and others known and unknown from the period of August 1, 2024 through the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

CLERK'S OFFICE
A TRUE COPY
Apr 11, 2025
s/MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 25-M-360 (SCD)
The Cellular Telephone Assigned )
Call Number 414-712-4799 ("Target Cell Phone B") )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Distribution of and possession with intent to distribute controlled substances; Conspiracy to distribute and to possess with intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of  180  days *(give exact ending date if more than 30 days:*  10/07/2025  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Joseph Esqueda*
*Applicant's signature*

Joseph Esqueda, HSI TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone _____ *(specify reliable electronic means)*.

Date:  4-11-25

*Judge's signature*

City and state:  Milwaukee, WI          Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**<u>AN APPLICATION FOR SEARCH WARRANT</u>**

I, Joseph Esqueda, being first duly sworn on oath, on information and belief state:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned cell number **414-712-4799 ("Target Cell Phone B")**, known to be used by **Jeronis M. MONTERO (XX/XX/1997)** and whose service provider is **AT&T**, a wireless telephone service provider ("Service Provider") headquartered at **11760 US HWY 1, Suite 300, North Palm Beach, FL 33408**. **Target Cell Phone B** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.      I am a Police Officer with the City of Milwaukee Police Department since April 2004, assigned to North Central High Intensity Drug Trafficking Area (HIDTA) – Interdiction Initiative, and a Federally Deputized Task Force Officer (TFO) with Homeland Security Investigations since October 2024.

1

4.     I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5.     As part of my duties as a HSI TFO, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 21, United States Code, Sections 841, 843, 846, and federal firearms offenses, including violations of Title 18, United States Code, Sections 922(g), 924(a), and 924(c).  In the course of my experience, I have and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, thefts, counterfeit crimes, including cellular telephones and other electronic telecommunication devices.

6.     During my law enforcement career, I have participated in numerous narcotics investigations and have authored numerous affidavits supporting criminal complaints and search and seizure warrants. I have debriefed multiple defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. Based on my training, experience, and conversations with other law enforcement officers (LEOs), I am familiar with the ways in which drug traffickers conduct their unlawful drug trafficking activity, including, but not limited to, their methods used to distribute, transport, store, manufacture, and import controlled substances, their use of code words and numbers to conduct their transactions, their methods for concealing and safeguarding narcotics and narcotics proceeds, their methods used to launder narcotics proceeds, their use of violence and threats of violence to protect their organization, and the methods employed by major narcotics organizations to thwart any investigation of their illegal activities. For example, I am familiar with their use of telephones, counter-surveillance, false

2

and/or fictitious identities, and the use of coded language during conversations when referring to narcotics to disguise the true meaning of the conversation.

7. I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

8. The facts in this affidavit come from my personal knowledge, training, and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon official records, witness statements, recorded statements, surveillance video, and public records, which I consider to be reliable as set forth herein.

9. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

10. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my or case agents' knowledge about this matter.

11. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with the intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with the intent to distribute controlled substances) have been committed, are being committed, and/or will be committed by Jeronis M. MONTERO ("MONTERO") (DOB: XX/XX/1997), and others.

12. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court

3

of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

13.     Case agents are currently investigating Miguel CARTAGENA-MIRANDA (DOB: XX/XX/1990) and Maleny DEL VALLE-ROSA (DOB: XX/XX/1992), who are shipping large amounts of cocaine into the Eastern District of Wisconsin from Puerto Rico to Jeronis MONTERO (DOB: XX/XX/1997) and Javier CARTAGENA-COLON (DOB:XX/XX/1987). Case agents believe that this Drug Trafficking Organization (DTO) has used and continues to use fictious names to send parcels through the United States Postal Service to Milwaukee, Wisconsin. During the course of the investigation, case agents have seized and searched two of the suspected DTO-associated parcels pursuant to search warrants. Each parcel was found to contain approximately one kilogram of cocaine.

14.     The investigation began in 2022, at which time, case agents began investigating Ricardo MORENO-CRUZ ("MORENO-CRUZ") (DOB: XX/XX/1985) for receiving large amounts of cocaine laden USPS parcels shipped to him from CARTAGENA-MIRANDA.  On May 22, 2023, MORENO-CRUZ was arrested after a controlled delivery and a search warrant was executed at his residence.  In a post-*Miranda* interview with MORENO-CRUZ, he advised he had multiple cocaine suppliers in Puerto Rico, and one source of supply for him had been CARTAGENA-MIRANDA.   According to MORENO-CRUZ, CARTAGENA-MIRANDA would ship one to two kilograms of cocaine in USPS parcels to MORENO-CRUZ for more than a year.  MORENO-CRUZ would pay CARTAGENA-MIRANDA approximately $20,000 per kilogram.  MORENO-CRUZ provided consent to case agents to search and download the contents of the cell phones in his possession when he was taken into custody.  After a review of the phone's

4

content, case agents located a conversation between MORENO-CRUZ and "Sugar White" through Facebook messenger. A review of the "Sugar White" Facebook profile showed the profile picture was of CARTAGENA-MIRANDA. The Facebook messenger conversation between CARTAGENA-MIRANDA and MORENO-CRUZ was from March 2023 to May 2023. Both subjects appeared to be discussing the price of a kilogram of cocaine ranging from $18,000 to $19,500.

15.     MORENO-CRUZ was later criminally charged for his participation in this drug trafficking organization. On January 9, 2024, MORENO-CRUZ pled guilty to two counts of possession with intent-cocaine and possession of a firearm by a convicted felon. *See State of Wisconsin v. Richard Moreno*, Milwaukee County Court Case 2023CF002604.

16.     Postal Inspectors for the United States Postal Inspection Service (USPIS) review Postal Service records and labels of parcels delivered to the state of Wisconsin from source narcotics areas or sent to those source narcotics areas from Wisconsin. Case agents know that, based on training and experience, drug traffickers will sometimes use USPS Priority Mail service, which is the intended USPS two-day delivery product. Based on my training and experience, I know drug traffickers use Priority Mail delivery service because of its reliability and the ability to track the article's progress to the intended delivery point. In my training and experience, traffickers will often use fictitious names, phone numbers, and/or addresses as well as incomplete names and addresses in an attempt to hide their trafficking efforts from law enforcement.

17.     I know, based on my training and experience, Puerto Rico is a trans-shipment point for controlled substances. As such, controlled substances are frequently transported from Puerto Rico via USPS, and the proceeds from the sale of the controlled substances are frequently returned to Puerto Rico via USPS and/or other means.

5

18.     As of February 2025, case agents have located approximately 30 suspicious parcels that were sent from Puerto Rico to the Milwaukee, Wisconsin area, and that are suspected to be associated with this DTO. It appears that CARTAGENA-MIRANDA, who is believed to be located in Puerto Rico, is orchestrating the shipment of cocaine to Milwaukee, Wisconsin. Through the course of the investigation, case agents have received copies of the Post Office surveillance video for many of the parcels shipped from Puerto Rico, which videos depict CARTAGENA-MIRANDA and DEL VALLE-ROSA, also believed to reside in Puerto Rico, shipping many of the various suspected cocaine laden parcels.

*IP Address Subscribed to Julio VARGAS Tracked SUBJECT PARCEL 22*

19.     On September 21, 2023, case agents were made aware of USPS Priority Mail parcel 9505510336373263233430 ("SUBJECT PARCEL 22"). SUBJECT PARCEL 22 was a USPS large flat rate parcel weighing approximately 8 lbs. 11 oz.  The shipping label for SUBJECT PARCEL 22 indicated it was from "Carla Jimenez Lopez Urb. Reparto Santa Teresita M 15 Calle 25 Bayamon PR 00956".  SUBJECT PARCEL 22 bore a handwritten label addressed to "Angel Threatt Gonzalez 2441 N Dr William Finlayson St Milwaukee WI 53212".  SUBJECT PARCEL 22 was postmarked on September 20, 2023, in Sabana Seca, Puerto Rico 00952 at approximately 10:28 a.m.  The postage paid was $22.80.

20.     On September 26, 2023, case agents applied for a federal search warrant for SUBJECT PARCEL 22.  On September 27, 2023, the search warrant was issued by United States Magistrate Judge Stephen Dries in the Eastern District of Wisconsin.  Upon executing the search warrant on SUBJECT PARCEL 22, case agents discovered one vacuum sealed bag of a white powdery substance, suspected to be cocaine, wrapped in multiple layers of vacuum sealed bags, plastic wrap, and carbon paper. Three additional smaller plastic bags containing unknown powders

6

were located within these wrappings. The brick of suspected cocaine had a gross weight of approximately 1,028 grams. The suspected cocaine field tested positive for cocaine HCl. The unknown powders were also tested, but they came back as inconclusive.

21.  The drug packaging, suspected cocaine, and the additional three unknown powders were later sent to the USPIS Forensic Laboratory for analysis. Certified laboratory testing revealed the presence of the following controlled substances:

      a.  Approximately 1,010.8 grams of cocaine hydrochloride and caffeine;

      b.  Approximately 0.4562 grams of heroin, fluorofentanyl, fentanyl, and procaine;

      c.  Approximately 0.9856 grams of fentanyl, cocaine, 4-anilino-N-phenethylpiperidine (4-ANPP), xylazine, and caffeine; and

      d.  Approximately 1.2323 grams of fentanyl, cocaine, 4-anilino-N-phenethylpiperidine (4-ANPP), xylazine, and caffeine.

22.  A latent print examination of SUBJECT PARCEL 22 and its contents found CARTAGENA-MIRANDA's prints were located on multiple locations including the items within the parcel, the adhesive side of clear tape, and pieces of green plastic wrap.

23.  A review of the USPS business records indicated an unknown person(s) was using a specific and unique method to track SUBJECT PARCEL 22. A subpoena return from AT&T indicated the Internet Protocols ("IP") used to track the parcel was subscribed to Julio VARGAS ("VARGAS"), 3908 N. 19th Place, Unit 1 Unit 1, Milwaukee, Wisconsin 53206, (262)900-5023. VARGAS was on probation for a previous felony drug case through the state of Wisconsin. On October 19, 2023, case agents were notified by the Milwaukee Police Department that VARGAS was murdered on this date. Phone records for VARGAS's phone number provided by AT&T above showed his phone had multiple phone contacts with 939-324-5219 (Target Cell Phone A).

7

The subscriber information for 939-324-5219, or Target Cell Phone A, was listed as CARTAGENA-MIRANDA. All of the phone contacts were made on August 24, 2023.

24.     On October 2, 2023, case agents received a copy of the Post Office surveillance video, which depicted DEL VALLE-ROSA shipping SUBJECT PARCEL 22.

*SUBJECT PARCEL 29*

25.     On or about January 30, 2025, case agents reviewed US Postal Service (USPS) business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505510690125027094604 ("SUBJECT PARCEL 29"). SUBJECT PARCEL 29 was a USPS large flat rate parcel weighing approximately 8 lbs. 7 oz. The shipping label for SUBJECT PARCEL 29 indicated it was from "Josue Rivera Calle Perla del Sur I28 Reparto Flamingo Bayamon PR 00959". SUBJECT PARCEL 29 bore a handwritten label addressed to "Carlos Garcia 1032 West Rogers St. Milwaukee WI 53204". SUBJECT PARCEL 29 was postmarked on January 27, 2025, in Bayamon, Puerto Rico 00957, at approximately 11:52 a.m. The postage paid was $26.30.

26.     A search of a law enforcement database indicated the recipient's name shown on the shipping label was fictitious. The sender's name could not be verified.

27.     On January 30, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 29. At approximately 9:22 a.m., a black Chevrolet Impala sedan bearing Wisconsin registration plate of AUC-9843 ("Subject Vehicle 1") parked in front of 1032 West Rogers Street. The Wisconsin Department of Transportation ("DOT") records showed Subject Vehicle 1 was registered to April Maria Puentes at 719 West Madison Street Upper, Milwaukee, Wisconsin. At approximately 9:52 a.m., Subject Vehicle 1 left the area and drove westbound on West Rogers Street. At approximately 10:22 a.m., Subject Vehicle 1 returned and parked in front

8

of 1032 West Rogers Street, in the same spot it was previously parked. At approximately 10:42 a.m., the USPS letter carrier arrived to the area and parked on West Rogers Street approximately one block west of Subject Vehicle 1. The letter carrier delivered mail to the South 11th Street block just north of West Rogers Street. While the letter carrier was delivering mail, at approximately 11:02 a.m., a suspected Hispanic male wearing a grey and black hooded sweatshirt with black and green shorts exited the front door 1032 West Rogers Street and appeared to get into Subject Vehicle 1. This Hispanic male subject was short with a heavy build and had a thick dark colored beard. The Wisconsin DOT records reflected Juan GARCIA-PAGAN had 1032 West Rogers Apartment 2 listed as his address on record. GARCIA-PAGAN was listed as 5'4'' tall and weighing 180 lbs. His driver's license photograph showed he had a thick dark beard. GARCIA-PAGAN matched the physical descriptors of the male who exited 1032 West Rogers Street.

28.     At approximately 11:18 a.m., the letter carrier left the area without delivering mail to West Rogers Street and drove several blocks west out of sight of case agents. Subject Vehicle 1 left the area at the same time and followed the letter carrier's vehicle. At approximately 11:19 a.m., Subject Vehicle 1 drove back to the area and again parked in front of 1032 West Rogers Street. From case agents' training and experience, it appeared the occupant(s) of Subject Vehicle 1 were attempting to conduct counter surveillance on the letter carrier and any possible law enforcement officers in the area.

29.     At approximately 11:26 a.m., the letter carrier arrived back to the area and again parked on West Rogers Street in front of Subject Vehicle 1. At approximately 11:29 a.m., the letter carrier delivered SUBJECT PARCEL 29 by placing it in front of the front door of 1032 West Rogers Street. Shortly thereafter, Subject Vehicle 1's passenger side rear door opened and the same male who earlier exited 1032 West Rogers Street got out of Subject Vehicle 1 and picked up

9

SUBJECT PARCEL 29. This male subject put SUBJECT PARCEL 29 through the front passenger side window and the occupant(s) of Subject Vehicle 1 took possession of it. Subject Vehicle 1 immediately left the area with SUBJECT PARCEL 29 and male subject went back into 1032 West Rogers Street.

30.     On February 18, 2025, case agents received a copy of the Post Office surveillance video, which depicted CARTAGENA-MIRANDA shipping SUBJECT PARCEL 29.

31.     Based on my training, experience, and familiarity with this investigation, the use of a fictious recipient names on SUBJECT PARCEL 29, CARTAGENA-MIRANDA shipping the parcel, the perceived countersurveillance of the delivery of the parcel, and the use of Subject Vehicle 1 to pick up the delivered parcel lead me to suspect that SUBJECT PARCEL 29 contained controlled substances.

*SUBJECT PARCEL 31*

32.     On or about February 11, 2025, case agents reviewed US Postal Service (USPS) business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505510336375041542512 ("SUBJECT PARCEL 31"). SUBJECT PARCEL 31 was a USPS large flat rate parcel weighing approximately 8 lbs. 5 oz. The shipping label for SUBJECT PARCEL 31 indicated it was from "Jose Delgado Ext LA Inmaculada DD9 Calle Santa Fe Toa Baja, PR 00949-3992". SUBJECT PARCEL 31 bore a handwritten label addressed to "Anthony Beyreis 2457 A W. McKinley Avenue Milwaukee, WI 53205". SUBJECT PARCEL 31 was postmarked on February 10, 2025, in Sabana Seca, Puerto Rico 00952, at approximately 12:22 p.m. The postage paid was $26.30.

33.     A search of a law enforcement database indicated the recipient's name shown on the shipping label was fictitious.

10

34.     On or about February 11, 2025, case agents reviewed USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505510690115041664938 ("SUBJECT PARCEL 32"). SUBJECT PARCEL 32 was a USPS large flat rate parcel weighing approximately 8 lbs. 2 oz. The shipping label for SUBJECT PARCEL 32 indicated it was from "David Rivera Calle Perla del Sur i28 Reparto Flamingo Bayamon, PR 00959". SUBJECT PARCEL 32 bore a handwritten label addressed to "Gabriel Hernandez 5125 N. 32nd St, Milwaukee, WI 53209". SUBJECT PARCEL 32 was postmarked on February 10, 2025, in Bayamon, Puerto Rico 00957, at approximately 1:01 p.m. The postage paid was $26.30.

35.     A search of a law enforcement database indicated the recipient's name shown on the shipping label was fictitious.

36.     Using an internet search engine, it showed the Sabana Seca Post Office located at 100 CARR 866, Sabana Seca, PR 00952, which is the postmark location for SUBJECT PARCEL 31, is approximately a 20-minute drive to the Bayamon Post Office located at 100 Victory Shopp Ctr Ste 1, Bayamon, PR 00957, which is the postmark location for SUBJECT PARCEL 32. SUBJECT PARCEL 31 was postmarked approximately 39-minutes before SUBJECT PARCEL 32. Based on case agents' collective training and experience, it is believed the subject(s) shipping SUBJECT PARCELS 31 and 32 intentionally visited two different nearby post offices to conceal their participation in shipping the parcels and to conceal the contents of each parcel.

37.     On February 13, 2025, law enforcement conducted surveillance at 5125 N. 32nd Street, the recipient's address for SUBJECT PARCEL 32. During the surveillance episode, law enforcement observed a Hispanic male appearing to be Leonardo PEREZ and Jeronis MONTERO

11

exit the front door of 5125 N. 32nd Street and get into a gray 2019 Honda Accord sedan bearing Wisconsin registration Plate No. AVH-4781 ("Subject Vehicle 2"). PEREZ was the driver and Jeronis MONTERO was the front seat passenger. Subject Vehicle 2 left the area and later returned and parked in front of 5125 N. 32nd Street. The Hispanic male appearing to be PEREZ and Jeronis MONTERO exited Subject Vehicle 2 and entered 5125 N. 32nd Street. Surveillance ended.

38.     A check of Wisconsin Registration Plate No. AVH-4781 through WI DOT revealed it was registered to Nicolasa Weary at 6519 W. Wisconsin Avenue, Milwaukee, WI.

39.     On February 13, 2025, case agents responded to the North Milwaukee Post Office located at 5995 N. Teutonia Avenue, Milwaukee, WI, and located SUBJECT PARCEL 32.

40.     On February 18, 2025, a search warrant was issued to search SUBJECT PARCEL 32 by United States Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin. Upon executing the search warrant on SUBJECT PARCEL 32, case agents discovered one sealed bag of a white powdery substance, suspected to be cocaine, wrapped in multiple layers of vacuum sealed bags, plastic wrap, tape, and carbon paper. The brick-shaped substance field tested positive for the presence of cocaine, and had a gross weight of approximately 1,030 grams.

*SUBJECT PARCEL 33*

41.     On or about February 11, 2025, case agents reviewed USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505512222085043969720 ("SUBJECT PARCEL 33"). SUBJECT PARCEL 33 was a USPS large flat rate parcel weighing approximately 8 lbs. 2 oz. The shipping label for SUBJECT PARCEL 33 indicated it was from "Hector Figueroa Calle 25 Urb Royal Town V12 Bayamon RR 00956". SUBJECT PARCEL 33 bore a handwritten label addressed to "Reylando Garcia 6029 W.

12

Lapham St. Milwaukee WI 53214". SUBJECT PARCEL 33 was postmarked on February 12, 2025, in Bayamon, Puerto Rico 00959, at approximately 9:18am. The postage paid was $26.30.

42.     A search of a law enforcement database indicated the recipient's name shown on the shipping label was fictitious. The sender's name could not be verified.

43.     On February 14, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 33.   During surveillance, a 2007 Ford Edge SUV bearing Wisconsin Registration Plate No. AXS-6429 parked at 6029 W. Lapham Street.   The driver, an unknown Hispanic female, exited the driver seat and entered 6029 W. Lapham Street.   At approximately 9:38 a.m., the USPS letter carrier scanned SUBJECT PARCEL 33 as delivered and placed it on the steps leading to the front door of the residence.   The same female subject opened the front door and placed SUBJECT PARCEL 33 inside the residence.  The same female subject then locked the front door and left the residence.

*SUBJECT PARCEL 34*

44.     On or about February 18, 2025, case agents reviewed USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505512222105045044871 ("SUBJECT PARCEL 34"). SUBJECT PARCEL 34 was a USPS large flat rate parcel weighing approximately 8lbs. 13 oz. The shipping label for SUBJECT PARCEL 36 indicated it was from "Alex Figueroa Ext La Inmaculada DD9 Calle 4 Toa Baja PR 00949". SUBJECT PARCEL 34 bore a handwritten label addressed to "Zach Croin 3755 S. Pennsylvania Ave St Francis WI 53235". SUBJECT PARCEL 34 was postmarked on February 14, 2025, in Bayamon, Puerto Rico 00959, at approximately 11:22 a.m. The postage paid was $26.30.  SUBJECT PARCEL 34 was delivered on February 18, 2025 at approximately 12:42 p.m.

13

45. A search of a law enforcement database indicated the recipient's name shown on the shipping label was fictitious. The sender's name could not be verified.

*SUBJECT PARCEL 36*

46. On or about February 25, 2025, case agents reviewed USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505510690125055119799 ("SUBJECT PARCEL 36"). SUBJECT PARCEL 36 was a USPS large flat rate parcel weighing approximately 7lbs. 13 oz. The shipping label for SUBJECT PARCEL 36 indicated it was from "Francisco Rivera Calle 25 V7 Urb Royal Town Bayamon, P.R 00956". SUBJECT PARCEL 36 bore a handwritten label addressed to "Travis Sligler 4559 S. Vermont ave St Francis Wi 53235". SUBJECT PARCEL 36 was postmarked on February 24, 2025, in Bayamon, Puerto Rico 00957, at approximately 12:59 p.m. The postage paid was $26.30.

47. A search of a law enforcement database indicated the recipient's name shown on the shipping label was fictitious. The sender's name could not be verified.

48. On February 26, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 36. At approximately 10:55 a.m., case agents observed a USPS letter carrier deliver SUBJECT PARCEL 36 by placing it on the front porch of 4559 S. Vermont Avenue, St. Francis, WI. Law enforcement then observed someone open the front door of the residence, take possession of SUBJECT PARCEL 36, and take it inside the residence. At 11:08 a.m., case agents observed Subject Vehicle 2 driving in the area. Subject Vehicle 2 parked in front of 4559 S. Vermont Avenue and a white female subject exited the front door of the residence while wearing a black hooded sweatshirt with a large front pocket that appeared to contain a weighted, large rectangular object. The female walked to Subject Vehicle 2, slightly out of sight of case agents. Moments later, the female walked away from Subject Vehicle 2 and back to the residence. As the

14

female walked away from Subject Vehicle 2, case agents observed her front pocket of the hooded sweatshirt was no longer weighted down, leading case agents to believe the female may have transferred the suspected drug contents of SUBJECT PARCEL 36 to the sole occupant of Subject Vehicle 2.

49.     Case agents followed Subject Vehicle 2 as it drove away from 4559 S. Vermont Avenue, St. Francis, WI.  During the follow, Subject Vehicle 2 stopped at the Shell Gas Station located at 641 N. Hawley Road, Wauwatosa, WI.  Case agents observed Subject Vehicle 2 park in the lot and the driver, later identified as PEREZ, exited the vehicle and walked into the gas station. A short time later, PEREZ exited the gas station carrying a half gallon of milk and returned to Subject Vehicle 2.  Subject Vehicle 2 then left the gas station and case agents followed it to 6517/6519 W. Wisconsin Avenue.  Subject Vehicle 2 pulled into the driveway and parked in the back of the residence. Case agents observed PEREZ walking away from Subject Vehicle 2 to the side door of the residence, carrying a white cardboard box and the half gallon of milk.  Case agents observed PEREZ use keys to open the side door of the residence and enter with the aforementioned items.

50.     Case agents conducted a check of Milwaukee Police records and discovered that on September 4, 2024, Milwaukee police officers conducted a traffic stop of Subject Vehicle 2, at which time the driver was identified as PEREZ.   Case agents reviewed a WI DOT photograph of PEREZ and positively identified him as the subject entering the side door of 6517/6519 W. Wisconsin Avenue and as the person entering and exiting Subject Vehicle 2 at the Shell Gas Station. A further check of PEREZ through Wisconsin Circuit Court Record system revealed PEREZ is currently on bail in Milwaukee County Case No. 2023CF3450 (Possession With the Intent to Deliver Cocaine (5-15grams), a felony.

15

51.    On or about February 27, 2025, case agents reviewed USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505510336375056549902 ("SUBJECT PARCEL 37"). SUBJECT PARCEL 37 was a USPS large flat rate parcel weighing approximately 8lbs. 7 oz. The shipping label for SUBJECT PARCEL 37 indicated it was from "Bryan Rojas Ext La Inmaculada DD7 Calle 4 Toa Baja PR 00949". SUBJECT PARCEL 37 bore a handwritten label addressed to "Enrique Sanchez 4122 W. Orchard St Milwaukee WI 53215". SUBJECT PARCEL 37 was postmarked on February 25, 2025, in Sabana Seca, Puerto Rico 00952, at approximately 11:57 a.m. The postage paid was $26.30.

52.    A search of a law enforcement database indicated the recipient's name shown on the shipping label was fictitious. The sender's name could not be verified.

53.    On February 27, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 37.  At approximately 11:30 a.m., case agents observed Subject Vehicle 1 arrive in the area and park in front of 4122 W. Orchard Street.  Case agents believed the Subject Vehicle 1 was intentionally parked in that specific position to be able to see when the USPS letter carrier delivered SUSPECT PARCEL 37.

54.    At approximately 12:52 p.m., case agents observed the USPS letter carrier arrive in the area.  At approximately 12:59 p.m., case agents observed the driver of Subject Vehicle 1 exit the vehicle, who case agents identified as Javier CARTAGENA-COLON ("CARTAGENA-COLON"), a member of the DTO.  CARTAGENA-COLON walked directly to the front porch of 4122 W. Orchard Street, just out of view of case agents.  At approximately 1:00 p.m., case agents observed the USPS letter carrier approach the residence with SUBJECT PARCEL 37, walk-up the front porch, just out of view of case agents, and then re-emerge without SUBJECT PARCEL 37.

16

SUBJECT PARCEL 37 was scanned as delivered at this same time. At approximately 1:04 p.m., case agents observed CARTAGENA-COLON walk off the porch of the residence while carrying what appeared to be SUBJECT PARCEL 37. CARTAGENA-COLON placed SUBJECT PARCEL 37 in the trunk of Subject Vehicle 1. CARTARGENA-COLON entered the driver seat of Subject Vehicle 1 and drove to 2475 S. 5th Street, where he parked in front. CARTAGENA-COLON exited the driver seat of Subject Vehicle 1 while MONTERO exited the front passenger seat. CARTAGENA-COLON retrieved what appeared to be SUBJECT PARCEL 37 from the trunk. MONTERO and CARTAGENA-COLON, who was carrying SUBJECT PARCEL 37, entered the front door of 2475 S. 5th Street.

### *SUBJECT PARCEL 38*

55.     On or about February 27, 2025, case agents reviewed USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505510336375057550372 ("SUBJECT PARCEL 38"). SUBJECT PARCEL 38 was a USPS large flat rate parcel weighing approximately 8lbs. 9 oz. The shipping label for SUBJECT PARCEL 38 indicated it was from "Hector Figueroa Ext La Inmaculada DD10 Calle 4 Toa Baja PR 00949". SUBJECT PARCEL 38 bore a handwritten label addressed to "Crystal Blythe 3909 N. 36th St, Milwaukee W.I. 53216". SUBJECT PARCEL 38 was postmarked on February 26, 2025, in Sabana Seca, Puerto Rico 00952, at approximately 12:36 a.m. The postage paid was $26.30.

56.     Using a law enforcement database, case agents conducted a search of the recipient's name shown on the shipping label and found it to be fictitious. The sender's name could not be verified.

57.     On February 28, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 38 to 3909 N. 36th Street.  At approximately 9:48 a.m., case agents observed the USPS letter carrier arrive in the area.   At approximately 9:52 a.m., case agents observed the USPS letter carrier deliver SUBJECT PARCEL 38 by placing it on the front porch of 3909 N. 36th Street.   At approximately 10:08 a.m., a gray 2006 Pontiac G6 coupe bearing Wisconsin Registration Plate No. UK6830 arrived and parked in front of the residence.  The driver and sole occupant of the Pontiac G6 sedan coupe exited the vehicle, retrieved SUBJECT PARCEL 38 from the porch, and entered the residence.  The driver was later identified as Todd Anthony BLYTHE (XX/XX/2003).

*SUBJECT PARCEL 39*

58.     On or about March 5, 2025, case agents reviewed USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505510336365063924922 ("SUBJECT PARCEL 39").  SUBJECT PARCEL 39 was a USPS large flat rate parcel weighing approximately 8 lbs. 7 oz.  The shipping label for SUBJECT PARCEL 39 indicated it was from "Jafet Ortiz Calle Perla del Sur I 28 Reparto Flamingo Bayamon PR 00959".  SUBJECT PARCEL 39 bore a handwritten label addressed to "Hector Rodriguez 2654 S. Tenth St. Milwaukee WI 53215".  SUBJECT PARCEL 39 was postmarked on March 4, 2025, in Sabana Seca, Puerto Rico 00952 at approximately 11:40 a.m.  The postage paid was $26.30.

59.     Using a law enforcement database, case agents conducted a search of the recipient's name shown on the shipping label and found it to be fictitious. The sender's name could not be verified. The sender's address has been seen before on previous suspicious SUBJECT PARCELS 29, 30, 32, and 35

18

60.     On Thursday, March 6, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 39 at 2654 S. 10th Street. At approximately 8:51 a.m., case agents observed a gray Honda Accord sedan bearing Wisconsin Registration Plate No. AVH-4781 park in the vicinity of 2654 S. 10th Street. Case agents were aware this vehicle was used by PEREZ, a member of the DTO. At approximately 9:45 a.m., case agents observed the USPS letter carrier arrived in the area of the residence. At approximately 9:47 a.m., the Honda Accord readjusted and parked in front of 2654 S. 10th Street. Case agents observed PEREZ exit the Honda Accord and enter the residence for a brief moment, and then return to the Honda Accord. The Honda Accord then readjusted and parked in the vicinity of the residence. At approximately 10:01 a.m., the USPS letter carrier was in possession of SUBJECT PARCEL 39 and delivered it to an unknown Hispanic male, who was standing on the front porch of the residence. The unknown Hispanic male carried SUBJECT PARCEL 39 to the Honda Accord sedan and turned it over to PEREZ through the front driver window. The Honda Accord then left the area.

61.     At approximately 10:04 a.m., case agents observed PEREZ arrive and park in the vicinity of 2475 S. 5th Street, which case agents knew to be associated with MONTERO. Case agents then observed PEREZ exit the Honda Accord while carrying SUBJECT PARCEL 39 and enter 2475 S. 5th Street. It should be noted, prior to PEREZ' arrival, case agents observed MONTERO arrive in a separate vehicle and enter 2475 S. 5th Street.

*SUBJECT PARCEL 40*

62.     On or about March 7, 2025, case agents reviewed USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505512222105065053891 ("SUBJECT PARCEL 40"). SUBJECT PARCEL 40 was a USPS large flat rate parcel weighing approximately 8 lbs. 9 oz. The shipping label for SUBJECT

19

PARCEL 40 indicated it was from "Bryan Rojas Calle 25 V5 Urb. Royal Town Bayamon PR 00956". SUBJECT PARCEL 40 bore a handwritten label addressed to "Vanessa Citro 2155 S 18th St. Milwaukee WI 53215". SUBJECT PARCEL 40 was postmarked on March 6, 2025, in Bayamon, Puerto Rico 00959 at approximately 11:37 a.m. The postage paid was $26.30. SUBJECT PARCEL 40 was delivered on March 8, 2025 at approximately 1:00 p.m.

63. Using a law enforcement database, case agents conducted a search of the recipient's name shown on the shipping label and found it to be fictitious. The sender's name could not be verified. Variations of the sender's address has been seen before on previously documented suspicious SUBJECT PARCELS 33 and 36;

64. On March 10, 2025, Inspector Fink was reviewing court-authorized GPS data for the location of Subject Vehicle 1 (commonly operated by CARTAGENA-COLON), which was providing live and up-to-date locations (along with historical data). The historical data for March 10, 2025, showed the Subject Vehicle 1 was in the area of the destination address, 2155 S 18th Street, of SUBJECT PARCEL 40 prior to its delivery. Approximately three minutes after SUBJECT PARCEL 40 was delivered, Subject Vehicle 1 then left the area and did not return for the remainder of the day.

### *SUBJECT PARCEL 41*

65. On or about March 7, 2025, case agents reviewed USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505510690115065678133 ("SUBJECT PARCEL 41"). SUBJECT PARCEL 41 was a USPS large flat rate parcel weighing approximately 8 lbs. 5 oz. The shipping label for SUBJECT PARCEL 41 indicated it was from "Javier Pagan Calle Perla del Sur I28 Reparto Flamingo Bayamon PR 00959". SUBJECT PARCEL 41 bore a handwritten label addressed to "Robert

20

Schneider 2828 W. National Ave Milwaukee WI 53215". SUBJECT PARCEL 41 was postmarked on March 6, 2025, in Bayamon, Puerto Rico 00957 at approximately 11:43 a.m. The postage paid was $26.30. SUBJECT PARCEL 41 was delivered on March 13, 2025 at approximately 9:55 a.m.

66.     Using a law enforcement database, case agents conducted a search of the recipient's name shown on the shipping label and found it to be fictitious. A review of the Wisconsin Department of Transportation records indicated the destination address for SUBJECT PARCEL 41, 2828 W. National Avenue, is the address on record for MONTERO. The sender's name could not be verified. The sender's address has been seen before on previously documented suspicious SUBJECT PARCELS 29, 30, 32, 35, and 39

67.     Using an internet search engine, it showed the Bayamon Post Office, located at 100 Ave. Ramon L Rodriguez, Bayamon, Puerto Rico 00959, which is the postmark location for SUBJECT PARCEL 40, is approximately a 6-minute drive to the Bayamon Post Office, located at 100 Victory Shopp Ctr Ste 1, Bayamon, Puerto Rico 00957, which is the postmark location for SUBJECT PARCEL 41. SUBJECT PARCEL 40 was postmarked approximately six minutes before SUBJECT PARCEL 41. Based on case agents' collective training and experience, it is believed that the subject(s) shipping the above-mentioned parcels intentionally visited two different nearby post offices to conceal their participation in shipping, and the contents of, the parcels.

*SUBJECT PARCEL 42*

68.     On or about March 25, 2025, case agents reviewed USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505510336365083932471 ("SUBJECT PARCEL 42"). SUBJECT PARCEL 42 was a USPS large flat rate parcel weighing approximately 8 lbs. 1 oz. The shipping label for SUBJECT

21

PARCEL 42 indicated it was from "Emanuel Ortiz Ext. La Imaculada Calle Santa Fe DD9 Toa Baja PR 00949". SUBJECT PARCEL 42 bore a handwritten label addressed to "Devin Wright 2825 S. Ninth St. Milwaukee W.I. 53215". SUBJECT PARCEL 42 was postmarked on March 24, 2025, in Sabana Seca, Puerto Rico 00952 at approximately 11:31 a.m. The postage paid was $26.30. SUBJECT PARCEL 42 was delivered on March 26, 2025 at approximately 3:10 p.m.

69.     Using a law enforcement database, case agents conducted a search of the recipient's name shown on the shipping label and found it to be fictitious. The sender's name could not be verified.

### Identification of *Target Cell Phone B*

70.     Case agents queried MONTERO in law enforcement intelligence files and discovered a "Sick & Injured" report filed under MPD Case No. 2410030033. The report related that Lisandra RIVERA (XX/XX/1997) was attacked by an unknown assailant and MONTERO was interviewed. During the interview with law enforcement officers, MONTERO identified his phone number **Target Cell Phone B**.

71.     A check of Cash App records revealed that **Target Cell Phone B** was associated to the account having the profile name of "Nonie" and $cashtag of "$bignon414". Based on prior investigations, case agents were aware MONTERO utilized the street moniker "Nonie".

72.     Additionally, case agents reviewed a law enforcement database and discovered that **Target Cell Phone B** was associated to Julio VARGAS. Case agents are aware Julio VARGAS, who was deceased, was the brother of MONTERO. Based on the aforementioned, case agents believe that MONTERO is using **Target Cell Phone B**.

22

*WhatsApp PRTT*

73.     On February 20, 2025, case agents received a federal court order for a WhatsApp LLC ("WhatsApp") pen register trap and trace device for both CARTAGENA-MIRANDA's phone number, Target Cell Phone A, and **Target Cell Phone B**, believed to be used by MONTERO.  The court order was issued by U.S. Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin and was served to WhatsApp on this same date.

74.     The data provided to case agents by WhatsApp for Target Cell Phone A showed various unique and specific routing prefixes and subnet identifications were used while accessing WhatsApp.  A postal inspector conducted a review of USPS business records, which showed these same routing prefix and subnet identifications were used to monitor the following USPS parcels:

    a.  SUBJECT PARCEL 30

    b.  SUBJECT PARCEL 32

    c.  SUBJECT PARCEL 33

    d.  SUBJECT PARCEL 36

    e.  SUBJECT PARCEL 42

75.     The data provided to case agents by WhatsApp for **Target Cell Phone B** showed various unique and specific routing prefixes and subnet identifications were used while accessing WhatsApp.  A postal inspector conducted a review of USPS business records, which showed these same routing prefix and subnet identifications were used to monitor the following USPS parcels:

    a.  SUBJECT PARCEL 27

    b.  SUBJECT PARCEL 29

    c.  SUBJECT PARCEL 30

    d.  SUBJECT PARCEL 31

23

e.  SUBJECT PARCEL 32

f.  SUBJECT PARCEL 33

g.  SUBJECT PARCEL 34

h.  SUBJECT PARCEL 36

i.  SUBJECT PARCEL 37

j.  SUBJECT PARCEL 38

k.  SUBJECT PARCEL 39

l.  SUBJECT PARCEL 40

m.  SUBJECT PARCEL 41

n.  SUBJECT PARCEL 42

76.     Based on their training, experience, and familiarity with this investigation, case agents believe that MONTERO is facilitating DTO-related activities.

## *CONCLUSION*

77.     Evidence obtained during this investigation leads case agents to believe that MONTERO operates **Target Cell Phone B**. The location data associated with **Target Cell Phone B** will assist case agents in conducting targeted physical surveillance and further identify the locations and individuals associated with and the nature and scope of MONTERO's drug trafficking activities.

78.     Case agents searched law enforcement databases to confirm that **Target Cell Phone B** is currently being serviced by AT&T.

79.     Case agents are requesting this warrant authorizing the initial collection of data related to **Target Cell Phone B** for 30 days to further investigate MONTERO'S activities, and to

24

identify locations to which MONTERO is traveling to further his drug distribution trafficking activities.

80.     Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that MONTERO is engaged in the trafficking and distribution of controlled substances and is using **Target Cell Phone B** while engaged in these crimes.    I further submit that probable cause exists to believe that obtaining the location information of **Target Cell Phone B** will assist case agents in determining MONTERO's criminal activities, to include meeting locations, co-conspirators, and sources of supply.

81.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

25

## Cell-Site Data

82.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **Target Cell Phone B**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

83.     I further know that some service providers can collect timing advance or engineering data commonly referred to as per call measurement data (PCMD), RTT, True Call, Advance Timing, WebMap, or equivalent. Per-call measurement data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## E-911 Phase II / GPS Location Data

84.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above,

26

cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of **Target Cell Phone B**, including by initiating a signal to determine the location of **Target Cell Phone B** on the Service Provider's network or with such other reference points as may be reasonably available.

85.     I know that AT&T Corporation can provide historical precision GPS location information, historical handset location data, and handset triangulation data, also known as Network Event Location System (NELOS) data. NELOS data may provide location data based upon the handset itself.

### Subscriber Information

86.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of

27

business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **Target Cell Phone B's** user or users and may assist in the identification of co-conspirators and/or victims.

### AUTHORIZATION REQUEST

87.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

88.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

89.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of **Target Cell Phone B** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

90.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **180 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **Target Cell Phone B** would seriously jeopardize the ongoing investigation, as such a disclosure would

28

give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

91.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

29

## ATTACHMENT A

### Property to Be Searched

1.     Records and information associated with the cellular device assigned call number: 414-712-4799 (referred to herein and in Attachment B as "**Target Cell Phone B**"), which is in the custody or control of AT&T (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2.     **Target Cell Phone B**.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.      The following subscriber and historical information about the customers or subscribers associated with **Target Cell Phone B** for the time period August 1, 2024, to the present:

   i.      Names (including subscriber names, user names, and screen names);

   ii.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.    Local and long distance telephone connection records;

   iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.     Length of service (including start date) and types of service utilized;

   vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

1

ix.      All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by **Target Cell Phone B** for the time period August 1, 2024, to the present including:

         a.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

         b.    information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.      Information associated with each communication to and from **Target Cell Phone B** for a period of 30 days from the date of this warrant, including:

     i.      Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

     ii.      Source and destination telephone numbers;

     iii.      Date, time, and duration of communication; and

     iv.      All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cell Phone B** will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.      Information about the location of **Target Cell Phone B** for a period of **30** days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

     i.      To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the

2

Service Provider's services, including by initiating a signal to determine the location of **Target Cell Phone B** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, involving **MONTERO** and others known and unknown from the period of August 1, 2024 through the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

3

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by AT&T US, Inc., and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of AT&T US, Inc. The attached records consist of _____.

I further state that:

a.     All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of AT&T US, Inc. and they were made AT&T US, Inc. as a regular practice; and

b.     Such records were generated by AT&T US, Inc.'s electronic process or system that produces an accurate result, to wit:

1.     The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of AT&T US, Inc. in a manner to ensure that they are true duplicates of the original records; and

2.     The process or system is regularly verified by AT&T US, Inc. and at all times pertinent to the records certified here the process and system functioned properly and normally.

1

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____
Date

_____
Signature

2